UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMEL DAVIS,

    Petitioner,

v.

SHERRI BURT,

    Respondent,
_____/

Civil No. 2:12-CV-11894
HONORABLE NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING THE MOTION TO HOLD THE PETITION FOR WRIT OF HABEAS CORPUS IN ABEYANCE, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Jamel Davis, ("Petitioner"), presently confined at the Cooper Street Correctional Facility in Jackson, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for carjacking, M.C.L.A. 750.529a. For the reasons that follow, the petition for writ of habeas corpus is **DENIED**.

**I. Background**

Petitioner was convicted following a bench trial in the Wayne County Circuit Court.

The victim testified that he was on his way to work when he stopped to inflate his tires at a Sunoco gas station in Detroit. The victim testified that while he was inflating his tires, two cars drove up and boxed him in. (Tr. 5/1/09, pp. 5-6). One of the cars, a Ford Thunderbird, pulled alongside the victim's car. The other car parked behind his vehicle. (*Id.,* p. 7.) The victim testified that the Thunderbird was being driven by petitioner, who was with a man named KorNealius Byrd. The Buick was driven by Michael Ragland. (*Id.,* p. 10.)

1

The victim and the three men had gotten into an argument three nights earlier at a nightclub. (*Id.* at 7-9.).

The victim got into his car to drive away, but as he backed up, Mr. Byrd kicked his rear bumper. The victim exited his car and tossed a glass bottle at Mr. Byrd, but it missed him. The victim got back into his car, but testified that "they started pulling me out." When the victim was pulled out of his vehicle, petitioner and the other two men began kicking and punching him. The victim testified that it appeared that petitioner and the other two men were acting together. (*Id.,* pp. 11-12).

While the victim was being assaulted, he heard someone yell "get the fucking car." (*Id.,* pp. 12, 20-23). There was some discrepancy over which of the victim's assailants made that statement. At trial, the victim testified that Mr. Byrd or "somebody" made this statement. (*Id.,* p. 12). In his statement to the police, the victim identified Mr. Ragland as the person who made this statement. On cross-examination, the victim stated that both petitioner and Mr. Ragland mentioned something about the car. The victim admitted that his testimony was different from what he wrote in his police statement and acknowledged that his memory at trial was not better than his memory of the incident when he made the report. The victim testified that when he reported the incident to police, he "probably forgot to say something; that both of them said it." (*Id.,* p. 23). At the preliminary examination, the victim likewise testified that petitioner and Mr. Ragland both yelled to Mr. Byrd to "get the fucking car." (*Id.,* pp. 37-38). After this statement was made, Mr. Byrd got into the victim's car and drove off. Petitioner got into his Thunderbird and Mr. Ragland into the Buick and the two men also drove away from the gas station. (*Id.* at pp. 13-14).

Following the robbery, the victim returned home and called the police, but then left

to go out looking for his car before the police arrived. The victim then went to the police station around 1:00 a.m. to make a statement, but he did not give the police the names of the perpetrators until he returned to the station around 10:00 a.m. the following morning. (*Id.,* pp. 14-16).

Petitioner testified that he had been driving by the gas station where he saw the victim. Petitioner had decided to confront the victim because the two men had argued at a club a few nights earlier. When petitioner got out of his vehicle, the victim threw a bottle at him and the two men began fighting. While the fight was taking place, "[s]ome one jumped in [Knight's car] and pulled right off." Petitioner stated that he recognized the carjacker from the neighborhood, could not say specifically who the person was, but that this person was not Mr. Ragland or Mr. Byrd. (*Id.* at pp. 47-51).

The judge convicted petitioner of carjacking. The judge indicated that his decision turned on the "issue of credibility" between the victim and petitioner. Although acknowledging "minor discrepancies" with the victim's testimony, the judge found "the Complainant's statement is more credible than the Defendant's; that some other dude did it." (Tr. 5/4/2009, pp. 7-8). The judge acknowledged that aiding and abetting was an issue (*Id.,* at p. 4), but found that the victim's car had been "taken in concert by the three people" and that "the three of them [were] involved in the pulling of the Defendant (sic) from the car and the assaultive behavior on him." (*Id.,* at p. 8).

Petitioner's conviction was affirmed on appeal. *People v. Davis*, No. 292613, 2010 WL 4774273 (Mich. Ct. App. Nov. 23, 2010); *lv. den.* 489 Mich. 899; 796 N.W.2d 251 (2011).

Petitioner seeks a writ of habeas corpus on the following ground:

3

Petitioner's carjacking conviction violates due process of law, pursuant to the 14th Amendment to the United States Constitution, and must be vacated, as, there was insufficient evidence to sustain his conviction.

Petitioner has also now filed a motion to hold the petition in abeyance so that he can return to the state courts to exhaust an additional claim involving an alleged defect in the criminal complaint and information filed against him in the Wayne County Circuit Court.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section

2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. Discussion

#### A. The sufficiency of evidence claim.

Petitioner claims that the evidence was insufficient to convict him as an aider and abettor to the carjacking.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the

original). The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir.2003); *See also Butzman v. U.S.,* 205 F. 2d 343, 349 (6th Cir. 1953)(in a bench trial, credibility of witnesses is a question for trial judge). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).

As an initial matter, petitioner contends that the trial court judge failed to make adequate findings of fact when he rendered his verdict.

Under Michigan law, a trial court judge in a bench trial is required to make separate findings of fact and conclusions of law, because this facilitates the appellate review process. *See Campbell v. Grayson,* 207 F. Supp. 2d 589, 596 (E.D. Mich. 2002)(*citing to People v. Johnson,* 208 Mich. 137, 141; 526 N.W. 2d 617 (1994)). However, there is no Supreme Court precedent which establishes that a trial court judge, sitting as a trier of fact, must make any specific findings as to each element of a crime to satisfy federal constitutional concerns. *See Wofford v. Straub,* 27 Fed. Appx. 517, 520 (6th Cir. 2001). Therefore, to the extent that the trial court made erroneous findings of fact or conclusions of law, this would be insufficient, in and of itself, to grant habeas relief to petitioner.

Petitioner's main contention is that there was insufficient evidence to establish that he aided and abetted in the carjacking. Petitioner claims that the evidence at best establishes that he was merely present when other persons took the victim's vehicle.

The elements of carjacking are: (1) the defendant took a motor vehicle from another person; (2) the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle; and (3) the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear. *People v. Davenport*, 230 Mich. App. 577, 579; 583 N. W. 2d 919 (1998).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the

> commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007)(*citing People v. Carines*, 460 Mich. 750, 757-58; 597 N.W. 2d 130 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *See Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995). The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the commission of the crime. *People v. Lawton*; 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992). Finally, the Michigan Supreme Court has held that there is no language in Michigan's aiding and abetting statute that shows an intent by the Michigan Legislature "to abrogate the common-law theory that a defendant can be held criminally liable as an accomplice if: (1) the defendant intends or is aware that the principal is going to commit a specific criminal act; or (2) the criminal act committed by the principal is an 'incidental consequence[ ] which might reasonably be expected to result from the intended wrong.'" *People v. Robinson,* 475 Mich. 1, 9; 715 N.W. 2d 44 (2006)(*quoting* Perkins, Criminal Law (3d ed.), pp. 741-43, 745).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *See*

9

*Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006); *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69; .

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller v. Anderson*, 662 F. 2d at 424. "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt. In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. at 754 (internal citation omitted). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than 'mere' presence". *Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not

10

'merely' present, but providing emotional encouragement and support." *Id.*

As the Michigan Court of Appeals indicated in rejecting petitioner's claim, *See Davis,* Slip. Op. at * 2-3, there was sufficient evidence for a rational trier of fact to conclude that petitioner aided and abetted the other two men in the carjacking. The evidence established that petitioner and the other two men arrived at the gas station together. Petitioner and Mr. Byrd were in one vehicle and Mr. Ragland was in another vehicle. Petitioner and Mr. Ragland used their vehicles to box in the victim's car. Petitioner helped remove the victim out of his vehicle and began fighting with him, which left the victim's car unoccupied, thus providing Mr. Byrd with an opportunity to take the vehicle. Most significantly, the victim testified that petitioner was one of the men who shouted to Mr. Byrd to take the victim's vehicle. Petitioner fled the scene after the incident without Mr. Byrd, who drove off in the victim's vehicle. Under the circumstances, there was sufficient evidence for a rational trier of fact to conclude that petitioner actively participated in the carjacking as an aider and abettor.

In support of his claim, petitioner cites to *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), in which the Sixth Circuit held that there was insufficient evidence to convict the petitioner of carjacking on an aiding and abetting theory.

Petitioner's case is distinguishable from *Brown* because although there was no evidence in that case that the petitioner arrived at the crime scene with the perpetrator of the carjacking, the evidence in this case established that petitioner arrived at the crime scene with the other two suspects. *See Davis v. Lafler,* 658 F. 3d 525, 533 (6th Cir. 2011)(en banc); *cert. den.* 132 S.Ct. 1927 (2012). Furthermore, although there was no evidence in *Brown* that the petitioner engaged in any overt acts to indicate that he was

11

involved in the carjacking, petitioner in this case was engaged in overt acts that furthered the carjacking, including removing the victim from the car and ordering Mr. Byrd to take the vehicle. *Id.* Finally, unlike the petitioner in *Brown,* petitioner fled the crime scene after the carjacking. *Id.* Unlike the petitioner in *Brown,* who did nothing after the crime to indicate that he was "working in tandem" with the perpetrator, *Id.,* there was evidence both before and after the carjacking from which the judge could conclude that petitioner "was involved in the planning and execution of the carjacking." *Id.*

Finally, to the extent that petitioner challenges the credibility of the victim regarding his testimony that petitioner told Mr. Byrd to take his vehicle, he would not be entitled to habeas relief. Determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *See Crenshaw v. Renico,* 261 F. Supp. 2d 826, 832 (E.D. Mich. 2003). Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* Moreover, when evidence in a bench trial "consists largely of contradictory oral evidence, due regard must be accorded the trial court's opportunity to judge the credibility of witnesses." *Bryan v. Government of Virgin Islands,* 150 F. Supp. 2d 821, 827 (D. Virgin Islands 2001). In this case, the trial court judge chose to credit the victim's testimony and not to believe petitioner's version of events. This Court must defer to the trial court's finding beyond a reasonable doubt that the victim was credible. *Id.* at 828. Petitioner is not entitled to

habeas relief on his sufficiency of evidence claim.

### B. The motion to hold the petition for writ of habeas corpus in abeyance.

Petitioner has filed a "Petition for Habeas Corpus Ad Subjiciendum Or, in the Alternative, to Hold the Current Proceedings in Abeyance." In his pleading, petitioner claims that there was a radical jurisdictional defect in his state court proceedings because the criminal complaint that was filed against him in the 36th District Court and the subsequent information that was filed against him in the Wayne County Circuit Court were defective because they gave petitioner inadequate notice of the charges against him. Petitioner asks this Court to either excuse petitioner from exhausting this claim before raising it in this Court or in the alternative, asks that this Court hold the petition in abeyance so that he can return to the state courts to exhaust the claim.

The Court will also deny petitioner's motion to stay the proceedings so that he can return to the state court to exhaust this claim. Although a district court has the discretion to stay a mixed habeas petition containing both exhausted and unexhausted claims to allow the petitioner to present his unexhausted claims to the state court in the first instance, *See Rhines v. Weber,* 544 U.S. 269 (2005), the stay and abeyance of a federal habeas proceeding is only appropriate when the district court determines that there was good cause for the petitioner's failure to exhaust his claims first in the state courts. *Id.* at 277. In addition, a district court should not grant a habeas petitioner a stay and abeyance in a proceeding involving a mixed habeas petition when the petitioner's unexhausted claims are plainly meritless. *Id.* at 277.

Petitioner is not entitled to a stay of proceedings for two reasons. First, petitioner no longer has an available state court remedy with which to raise this claim. Petitioner

indicates that he filed a post-conviction motion for relief from judgment with the trial court, which was denied on October 27, 2011. By his own admission, petitioner abandoned the issues that he raised in that motion. Under M.C.R. 7.205(F)(3), petitioner had six months to file an application for leave to appeal the denial of this motion to the Michigan Court of Appeals. Petitioner never filed an appeal from the denial of his post-conviction motion and the time period for him to seek appellate review of his post-conviction motion has expired.

Under M.C.R. 6.502(G)(1), a criminal defendant in Michigan can typically file only one motion for relief from judgment with regard to a criminal conviction. *See Banks v. Jackson,* 149 Fed. Appx. 414, 418 (6th Cir. 2005); *Mohn v. Bock,* 208 F. Supp. 2d 796, 801 (E.D. Mich. 2002); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999)(citing to *People v. Ambrose*, 459 Mich. 884; 587 N. W. 2d 282 (1998)). However, M.C.R. 6.502(G)(2) states that a defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. *Banks,* 149 Fed. Appx. at 418; *Mohn,* 208 F. Supp. 2d at 801; *Hudson,* 68 F. Supp. 2d at 800-01.

Petitioner no longer has an effective state remedy to exhaust this claim because the Michigan Court Rules prohibit filing second or successive motions for relief from judgment and petitioner cannot satisfy either of the two exceptions to this rule, namely, a retroactive change in the law or newly discovered evidence. M.C.R. 6.502(G)(2). *See Mohn v. Bock,* 208 F. Supp. 2d at 800-01. Therefore, petitioner is barred from pursuing an otherwise available state court remedy, and this claim must be deemed exhausted by this Court. *Id.* (Citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996); *Martin v. Mitchell*, 280 F.3d at 603

(citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)). This Court may review the petitioner's procedurally defaulted claim on the merits only if he shows cause for not raising his claim or claims at all levels of state court review and prejudice, or that he is actually innocent of the crimes for which he was convicted. *Gray*, 518 U.S. at 162; *Hannah v. Conley*, 49 F. 3d 1193, 1196, n. 3 (6th Cir. 1995); *Mohn,* 208 F. Supp. 2d at 801.

While ineffective assistance of appellate counsel might excuse petitioner's failure to raise this claim on his direct appeal, it does not excuse petitioner's own failure to exhaust this claim in his post-conviction proceedings. *See Gadomski v. Renico*, 258 Fed. Appx. 781, 784 (6th Cir. 2007). A habeas petitioner's *pro se* status and ignorance of rights at the state court level does not constitute cause which would excuse the procedural default. *Hannah v. Conley,* 49 F. 3d at 1197.

Petitioner has failed to establish good cause for failing to exhaust this claim in the state courts. Therefore, a stay of the current petition is not appropriate. *See Vasquez v. Parrott,* 397 F. Supp. 2d 452, 464 (S.D.N.Y. 2005).

The Court will further deny petitioner a stay of the proceedings, because his claim is plainly meritless. *Vasquez,* 397 F. Supp. 2d at 464.

A state criminal defendant has a due process right to be informed of the nature of the accusations against him. *Lucas v. O'Dea,* 179 F. 3d 412, 417 (6th Cir. 1999). Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method

the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F. 2d 918, 930 (6th Cir. 1988).

A complaint or indictment need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him or her to prepare a defense. Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira v. Marshall*, 806 F. 2d 636, 639 (6th Cir. 1986); *Dell v. Straub,* 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002).

An alleged defect in a state court information or indictment is therefore not constitutional error unless a habeas petitioner can establish that: (1) he did not receive adequate notice of the charges; and (2) he was therefore denied the opportunity to defend himself against the charges. *See Roe v. Baker,* 316 F.3d 557, 570 (6th Cir. 2002); *See also Rhea v. Jones*, 622 F. Supp. 2d 562, 583 (W.D. Mich. 2008).

In the present case, petitioner has failed to offer any argument as to how the criminal complaint or the information filed in this case inadequately advised him of the charge that was being brought against him. Moreover, an accused's constitutional right to notice of the criminal charge or charges brought against him or her can be satisfied by other means, such as a bill of particulars, a preliminary examination, and criminal pre-trial discovery. *See Dowell v. C.M. Lensing,* 805 F. Supp. 1335, 1343 (M.D. La. 1992). In the present case, a preliminary examination was conducted in petitioner's case on November 18, 2008, during which time the victim testified and petitioner was able to hear the factual allegations against him, thus putting him on notice of the charges against him. In addition,

petitioner was convicted by the judge after a trial. The Ninth Circuit has observed that neither *Cole v. Arkansas*, *supra*, nor *In re Oliver*, *supra,* "foreclose the premise that constitutionally adequate notice may come from evidence presented at trial." *See Troches v. Terhune,* 74 Fed. Appx. 736, 737 (9th Cir. 2003). Petitioner has failed to show that he lacked adequate notice of the charge against him in this case. Because petitioner's claim is without merit, the Court will deny his motion to hold the case in abeyance.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell v. Straub,* 194 F. Supp. 2d at 659. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous.

*Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the motion to hold the petition in abeyance is **DENIED.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated: December 5, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 5, 2012, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer  
        Case Manager